# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ex rel. MELISSA SIMMS POWELL, et al., | Case No. 13 C 7825 |
| Plaintiffs, | District Judge Edmond E. Chang |
| v. | Magistrate Judge Geraldine Soat Brown |
| AMERICAN INTERCONTINENTAL UNIVERSITY, INC., et al., | |
| Defendants. | |

## MEMORANDUM OPINION AND ORDER

Geraldine Soat Brown, United States Magistrate Judge

Before the court is plaintiffs' motion to compel a non-party, the Higher Learning Commission ("HLC"), to re-produce a corporate representative to testify further pursuant to a deposition subpoena. (Pls.' Mot.) [Dkt 1.] The motion arises from litigation in the Northern District of Georgia and is presented in the Northern District of Illinois because the deposition at issue was taken in Chicago, Illinois. Fed. R. Civ. P. 37(b)(1). The District Judge referred the motion to this court pursuant to Local Rule 72.1. [Dkt 6.] HLC opposes plaintiffs' motion and has filed a cross-motion for a protective order. (HLC's Mot.) [Dkt 12.][1] For the reasons below, plaintiffs' motion to compel and HLC's motion for a protective order are both denied.

---

[1] Defendants American InterContinental University, Inc., *et al.*, have not taken a position on the motions nor submitted any materials to this court.

1

## Background

In 2008, plaintiffs initiated a *qui tam* action under the False Claims Act, 31 U.S.C. § 3730(b), against American InterContinental University, Inc. ("AIU"), Career Education Corporation, and other unknown persons (collectively, "defendants") in the Northern District of Georgia. *See United States ex rel. Powell v. Am. InterContl. Univ., Inc.*, No. 1:08-CV-2277-RWS, 2012 WL 2885356 at *1 (N.D. Ga. July 12, 2012) (the "Georgia lawsuit"). Plaintiffs alleged that defendants obtained federal funds by falsely representing that AIU complied with federal law prohibiting incentive-based compensation for enrollment counselors and with the accreditation standards of the Southern Association of Colleges and Schools ("SACS"). *Id.* In 2012, the district court dismissed all but the accreditation claim. *Id.* at *6-9, 11.

In an opinion earlier this year, the magistrate judge supervising discovery in the Georgia lawsuit revised the scope of discovery to conform to the remaining claim in the case. (HLC's Mot., Ex. A, Order, Feb. 22, 2013, at 17.) [Georgia lawsuit dkt 201.] As described in that opinion, SACS had put AIU on probation but restored it from probationary status in December 2007. (*Id.* at 17.) In their remaining claim, plaintiffs allege that defendants made false representations to SACS in order to be removed from probation and to be accredited. (*Id.* at 7.) SACS was, however, no longer the accreditation organization for AIU after November 6, 2008. (*Id.* at 18.) Based on that fact and on the order dismissing all but the accreditation claim, the magistrate judge granted the defendants' request to prohibit discovery of documents created after November 6, 2008. (*Id.* at 17-19.) Fact discovery in the Georgia lawsuit was ordered closed on October 24, 2013. (Order, Oct. 9, 2013.) [Georgia lawsuit dkt 305.]

In September 2013, plaintiffs served a subpoena to depose HLC in Chicago, Illinois, pursuant to Fed. R. Civ. P. 30(b)(6), and listed 20 different topics for the deposition. (HLC's Mot., Ex. B.)[2] HLC objected to the scope of the deposition, arguing that, because the lawsuit related to alleged problems arising during SACS's accreditation of AIU, there was no need for discovery about HLC's general accreditation standards, its investigation into AIU, or anything occurring after November 6, 2008. (HLC's Mot., Ex. C.) In response to these objections, plaintiff sent a revised subpoena limiting the deposition to the following three categories of information:

1. Communications between HLC and SACS referencing AIU, which transpired between January 1, 2005, and November 6, 2008.

2. HLC's policies and procedures effective during all periods of time between January 1, 2005, and November 6, 2008, relating to its accreditation of institutions that are accredited by another regional accrediting body, institutions that are on probation or suspended by, or whose accreditation has been revoked by another regional accrediting body.

3. Communications between AIU and HLC regarding AIU's satisfaction of SACS' standards, specifically statements made by AIU regarding its practices and procedures for admitting students and for ensuring the qualification of its faculty members between January 1, 2005, and November 6, 2008.

(Pls.' Mem., Ex. D.) [Dkt 4.] HLC agreed to the deposition with these limitations. (HLC's Mot. at 7.)

The deposition of HLC's Rule 30(b)(6) witness, Dr. Andrew Lootens-White, took place in Chicago on October 17, 2013, a week before the scheduled conclusion of fact discovery.[3] (Pls.'

---

[2] HLC had previously produced documents to plaintiffs pursuant to a document subpoena served in 2011. (Pls.' Mem. at 3 n. 4.) [Dkt 4.]

[3] Plaintiffs' motion included redacted excerpts from Dr. Lootens-White's deposition. The court requested and the parties provided, a complete copy of the deposition for the court's use. Plaintiffs are ordered to file the complete unredacted transcript on the docket of the Northern District

Mem. at 1.) Throughout the deposition, which lasted more than two and a half hours, HLC's counsel instructed Dr. Lootens-White not to answer certain questions posed by plaintiffs' counsel, asserting that the questions were outside the scope of the subpoena. (*Id.* at 4-6.) For example, the witness was instructed not to answer these questions:

- HLC has an accrediting role, correct? (*Id.*, Ex. A, HLC Dep. at 27.)

- How would you describe what HLC is and what it does? (*Id.* at 26-27.)

- How many schools does HLC accredit? (*Id.* at 29.)

- Were you aware that a number of the documents submitted to HLC as part of the accreditation package from AIU had also been submitted to SACS in response to SACS probation?

- Was HLC ever informed of anyone from AIU intentionally misleading a SACS visiting team? (*Id.* at 83.)

- If AIU had informed you that they intentionally misled a SACS visiting team is that something that HLC would have been interested in its accrediting decision? (*Id.* at 85.)

HLC says that it objected to many of the questions because they "were related to HLC's accreditation of AIU, which occurred in mid-2009, well after the temporal limits established by the Court's Order." (HLC's Mot. at 11.) Further, at the deposition HLC's counsel argued that the questions about HLC's "role" and "what it does" were improper because they were not directly related to the limited inquiry about HLC's policies and procedures as described in subpoena topic #2. (HLC Dep. at 27-29.)

---

of Illinois under seal in light of the protective order entered in the Georgia lawsuit [Georgia lawsuit dkt 217].

4

Plaintiffs now ask this court for an order directing HLC to re-produce its witness and requiring counsel to abstain from directing the witness not to answer questions. (Pls.' Mem. at 9.) Plaintiffs also ask for sanctions against HLC in the amount of their "fees and costs incurred in bringing this motion and in attending a reset deposition in Chicago." (*Id.*) HLC asks the court to deny plaintiffs' request and to issue a protective order under Fed. R. Civ. P. 30(d). (HLC's Mot. at 12.)

**Legal Standard**

During a deposition, objections "must be noted on the record, but the examination still proceeds; the testimony is taken subject to any objection." Fed. R. Civ. P. 30(c)(2). "A person may instruct a deponent not to answer only when necessary to preserve a privilege, to enforce a limitation ordered by the court, or to present a motion under Rule 30(d)(3)." *Id.* If a nonparty deponent fails to answer a question, the questioning party may move to compel an answer. Fed. R. Civ. P. 37(a)(3)(B)(i).

**Discussion**

As an initial matter, plaintiffs argue that HLC's motion for a protective order is untimely because it was filed nearly a month after the deposition was taken. (Pls.' Reply at 5.) [Dkt 17.] As this court observed at the initial hearing on November 8, 2013, Rule 30(d) provides only for the filing of motions to terminate or limit "[a]t any time during a deposition." Fed. R. Civ. P. 30(d)(3)(A). To use this rule, an attorney should suspend the deposition, state the problems on the record, and apply for court protection immediately. *See NDK Crystal, Inc. v. Nipponkoa Ins. Co.*,

5

No. 10 C 1824, 2011 WL 43093 at *4 (N.D. Ill. Jan. 4, 2011). Although the immediacy requirement may be overlooked when the movant is pro se, *Burnett v. City of Herrin*, No. 10-cv-0533-JPG-SCW, 2011 WL 4007377 at *1 (S.D. Ill. Sept. 8, 2011), that is not the situation here. Furthermore, as plaintiffs note, HLC does not provide any justification for the delay in requesting an order limiting the deposition. Thus, HLC's motion for a protective order is denied as untimely.

For their motion to compel, plaintiffs argue that it was improper for HLC's attorney to instruct Dr. Lootens-White not to answer without asserting a claim of privilege. (Pl.'s Mem. at 8.) This view, however, is overly restrictive. Rule 30(c)(2) allows attorneys to instruct a witness not to answer not only to protect privilege but also "to enforce a limitation ordered by the court." Here, the court in Georgia ordered in February 2013 that "discovery should not be permitted for documents created subsequent to November 6, 2008, because . . . SACS no longer was the accreditation organization for AIU." (Order, Feb. 22, 2013, at 18.) HLC contends that order provides support for its attorney's instructions not to answer questions "related to HLC's accreditation of AIU, which occurred in mid-2009." (Defs.' Mot. at 11.)

Plaintiffs maintain that the February order is not controlling. First, plaintiffs argue that the order applies only to discovery of documents, not deposition testimony, and only to discovery from defendants, not third parties. (Pls.' Reply at 8-9.) The February order, however, applies to all discovery. The heading for the section of the order addressing this issue states, "Discovery on the SACS Fraud Claim Should not Extend Beyond November 2008." (Order, Feb. 22, 2013, at 17.) The court also explained, without limitation, that "the temporal scope of discovery must be curtailed." (*Id.* at 18.) Moreover, plaintiffs' counsel was notified of HLC's interpretation of the discovery order when HLC objected to the initial subpoena. At that point, plaintiffs' counsel could

6

have asked the court in Georgia to clarify the scope of discovery but instead agreed to include the cut-off date as a limitation in the subpoena. Plaintiffs' agreement to those limitations underscores counsel's understanding that the February order limited discovery from non-parties as well as defendants, and applied to deposition testimony as well as document production. This court cannot create an exception to the Georgia court's discovery order.

Plaintiffs also decry what they characterize as HLC's "bad faith" behavior, arguing that HLC knew the November 6, 2008 date was "erroneous" and negotiated its inclusion in the subpoena as a trap for plaintiffs' counsel. (Pls.' Reply at 9-10.) The record does not support plaintiffs' protestations. First, plaintiffs say that it "became apparent during HLC's truncated deposition . . . that HLC did not begin accrediting AIU in November 2008, but rather in May 2009." (Pls.' Reply at 9.) The deposition was not, however, the first time plaintiffs became aware of the May 2009 date. As early as March 2011, more than two years before the deposition, plaintiffs acknowledged in the proceedings in Georgia that "HLC granted AIU accreditation in May 2009." (Pls.' Opp'n Defs.' Mot. Quash Subpoena at 8.) [Georgia lawsuit dkt 99.] Because the plaintiffs knew about the 2009 accreditation date and agreed to the 2008 limitation when they negotiated the scope of the subpoena, their effort to portray HLC as setting a trap is unpersuasive.

Second, there is no evidence before this court that the magistrate judge's statement that SACS stopped accrediting AIU on November 6, 2008 is, in fact, "erroneous" as plaintiffs claim. The fact that HLC granted accreditation to AIU in May 2009 does not, standing alone, prove anything about when SACS stopped accrediting AIU. Significantly, Plaintiffs knew at the time the February 2013 order was entered that there was a gap between the November 6, 2008 date stated in the

7

magistrate judge's order and May 2009 date when HLC accredited AIU. There is no evidence in the record before this court that plaintiffs ever raised this with the court in the Georgia lawsuit.

Plaintiffs argue, however, that some of the questions that Dr. Lootens-White was instructed not to answer relate to conduct occurring before November 2008. (Pls.' Reply at 3-4, 7.) Plaintiffs list three types of questions that fell into this category: questions about (1) whether HLC has an accrediting role, (2) how many schools HLC accredits, and (3) HLC's policies in regard to decisions by certain types of other accreditors. (*See id.* at 7; HLC Dep. at 27-29, 68.) On their face, these questions do not seek information outside the temporal scope of the February 2013 discovery order. HLC nonetheless asserts that plaintiffs' motion should be denied because the questions at issue amount to "undefined, unfocused fishing expeditions," and plaintiffs fail to explain what they hope to gain from a second deposition. (HLC's Mot. at 10.)

This court may deny a motion to compel a deposition if it would not aid "'the exploration of a material issue.'" *CSC Holdings, Inc. v. Redisi*, 309 F.3d 988, 993 (7th Cir. 2002) (quoting *Isr. Travel Advisory Serv., Inc. v. Isr. Identity Tours, Inc.*, 61 F.3d 1250, 1254 (7th Cir. 1995)); *see Loc. 744, Intl. Bhd. of Teamsters v. Hinckley & Schmitt, Inc.*, 76 F.3d 162, 165 (7th Cir. 1996) (affirming denial of motion to compel when movant had not shown the "relevance of the information sought"). HLC points to the recent decision in *Last Atlantis Capital, LLC v. AGS Specialist Partners*, Nos. 04 C 0397, 05 C 5600, 05 C 5671, 2013 WL 4759581 at *3 (N.D. Ill. Sept. 4, 2013), which denied a similar request for further discovery when counsel's instructions not to answer during a deposition ran afoul of the federal rules. No additional discovery was warranted, the court explained, because the party seeking it had "not explained what additional testimony they require or why the testimony they got was inadequate." *Id.*

Having reviewed the deposition transcript, this court declines to order HLC to produce a witness for a continued deposition. As in *Last Atlantis Capital*, the plaintiffs here have not shown that compelling answers to the questions addressing pre-November 2008 conduct will produce any additional material evidence. To start, in a number of instances in which HLC's counsel initially instructed the witness not to answer, the question was eventually answered after plaintiffs' counsel rephrased the question. For example, HLC's counsel eventually allowed the witness to answer whether "HLC accredits higher education institutions," thereby providing the answer to plaintiffs' counsel's question about HLC's accrediting role. (HLC Dep. at 29.) Likewise, it is not correct, as plaintiffs claim, that HLC's counsel directed the witness not to answer "'[a]ny questions' on the subject of whether HLC was aware that AIU had been on probation with SACS." (Pls.' Mem. at 5.) That question was asked and answered, and further deposition questions on that topic were also answered. (HLC Dep. at 56, 58-59.)

Furthermore, a number of the topics which HLC refused to answer had been removed from the deposition topics during the pre-deposition negotiations between HLC's counsel and plaintiffs' counsel. For example, plaintiffs' counsel asked questions about HLC's communications with the Department of Education regarding AIU. (HLC Dep. at 64.) That topic appeared on the initial deposition subpoena (HLC's Mot., Ex. B, at 6), but was not among the three deposition topics in the final subpoena. Likewise, plaintiffs' counsel asked whether HLC accredits more proprietary schools than SACS. (HLC Dep. at 70.) That topic was also initially listed (HLC's Mot., Ex. B, at 8), but deleted from the final subpoena.

Finally, it is important to remember that plaintiffs' remaining claim in the case is that defendants made false statements to SACS with regard to AIU's purported compliance with SACS's

9

accreditations standards. (Order, Feb. 22, 2013, at 6-9.) HLC is a non-party to the lawsuit whose deposition is being taken at the tail-end of discovery. Its accreditation practices are not at issue. Plaintiffs offer no reason why the answers to questions about how many schools HLC accredits and how HLC responds to the actions of certain outside accreditors might have any bearing on AIU's alleged misrepresentations to SACS. Thus, plaintiffs have not justified the need to redepose HLC's representative and their motion to compel is denied.

## Conclusion

For the reasons set forth in this order, plaintiffs' motion to compel and HLC's motion for a protective order are denied.

_____
Geraldine Soat Brown
United States Magistrate Judge

**DATE:** December 10, 2013